R. M. ANDERSON, *Plaintiff in Error,* v. FRANK BRYSON, *Defendant in Error.*

Division A.

Opinion Filed December 20, 1927.

*E. L. Bryan,* of Tampa, for Plaintiff in Error;

No appearance for Defendant in Error.

STRUM, J.—Plaintiff in Error, as plaintiff below, sued the defendant in error to recover damages for malicious prosecution. The trial resulted in a directed verdict and judgment for the defendant, to review which judgment this writ of error is taken.

This action grew out of a former prosecution of the plaintiff Anderson by the defendant Bryson before a Justice of the Peace of Hillsborough County in which the plaintiff Anderson was charged with having committed the offense of issuing a worthless check in violation of Chapter 9328, Laws of 1923, which prosecution resulted in a discharge of the plaintiff Anderson after hearing, and which prosecution the plaintiff alleges was instituted by the defendant falsely, maliciously and without probable cause, to the damage of the plaintiff.

At the trial plaintiff introduced in evidence, without objection from the defendant, a certified transcript of the record of the proceedings before the Justice of the Peace, including the affidavit sworn to by the defendant Bryson, the warrant for the plaintiff issued pursuant thereto, with the officer's return thereon, together with a copy of the docket entries showing the discharge of the plaintiff Anderson after hearing.

The following question was thereupon interjected by the counsel for the defendant:

"Q. Is Mr. Anderson, the plaintiff in this case, the same Anderson whose name is signed to the copy of the alleged worthless check issued in March?

"A. (By Mr. Bryan, counsel for plaintiff):

The same Anderson. I will put him on the stand."

The plaintiff was then put upon the stand, and after identifying himself as being the person referred to as the defendant in the transcript of the proceedings before the

justice of the peace offered in evidence, was asked the following question:

"Q. Mr. Anderson, I will get you to state to the jury the circumstances and conditions under which you gave Mr. Bryson this $712.00 check."

The question was objected to by the defendant, upon which the trial judge made the following ruling: "My understanding of the law is that when he (the defendant) admits that paper in evidence (referring to the transcript from the justice of the peace court) it shows that that man was illegally held and improperly prosecuted. I really think you can go on and prove damages to your man. Go on and prove your damages and then as Mr. Watson—if he attempts to testify in this case you may show all the reasons why."

The plaintiff proceeded with proof of his damages and rested his case.

The defendant then moved for a directed verdict in his behalf, which motion was granted, the trial court making the following ruling thereon:

"In the argument of counsel for the defense, in his argument to the court, he produced a check and argued it was a post dated check, and came within the statutes of 1923, which affected, the making of checks, drafts or orders, and the court holds this is at least an order, and the post dating of it, if not paid, was an offense against the State of Florida, and the defendant had the right to sue out the warrant. The court instructs a verdict for the defendant."

The plaintiff then moved the court to allow him to reopen his case and "permit plaintiff to prove by R. M. Anderson (the plaintiff) that at the time said check was given it was post dated and given with the understanding that it was to be held by Frank Bryson (the defendant) for a later date than the 30th for plaintiff to raise funds

to pay it; that the said Bryson knew and was so informed by plaintiff that plaintiff had no funds in the bank with which to pay said check. This motion is made in view of the fact that the court had already ruled when plaintiff was on the witness stand that plaintiff by the introduction of the certified transcript from the justice court had made a *prima facie* case.'' This motion was denied.

In sustaining the defendant's objection to the question originally propounded to the plaintiff for the purpose of eliciting the circumstances under which the check in question was given, the trial judge ruled in effect that the introduction in evidence of the transcript of the proceedings before the justice of the peace showing a hearing on the criminal charge and the consequent discharge of this plaintiff, disclosed, *prima facie,* a want of probable cause for the prosecution, from which malice might be inferred, and that in the absence of contrary evidence, the plaintiff had made out a *prima facie* case upon which he was entitled to go to the jury. See Stewart v. Sonnerborn, 98 U. S. 187, 25 L. Ed. 116; Wheeler v. Nesbitt, 24 How. (U. S.) 544, 16 L. Ed. 765; Tatum Bros. Real Estate Inv. Co. v. Watson, 109 South. Rep. 623; Torsch v. Dell, 41 Atl. Rep. 903; Stubbs v. Mulholland, 67 S. W. Rep. 650; Butcher v. Hoffman, 73 S. W. Rep. 266. See also notes to Jenkins v. Gilligan (108 N. W. Rep. 237), 9 L. R. A. (N. S.) 1087.

In an action for malicious prosecution, the question of probable cause is a mixed question of law and fact. When the facts relied on to show probable cause are in dispute, their existence is a question of fact for the determination of the jury; but their legal effect, when found or admitted to be true, is for the court to decide as a question of law. Stewart v. Sonnerborn, *supra;* Brown v. Selfridge, 224 U. S. 189; 56 L. Ed. 727.

The action of the trial court in granting the defend-

ant's motion for a directed verdict, and in denying the plaintiff's motion to re-open his case to show the existence of a contemporary agreement between himself and the defendant concerning the future payment of the check, can be sustained only on the theory that the admission of the plaintiff that he is the same person who signed the alleged worthless check conclusively shows, as a matter of law, the existence of probable cause for the criminal prosecution, even though the drawer of the check (the plaintiff) advised the payee (this defendant) when the check was issued that it was a post dated check and that there was no funds in the bank to cover the same; and even though the issuance of the check was attended by a contemporaneous agreement that the payee would hold the same until a future date in order that the drawer might raise funds with which to pay it.

Chapter 9328, Laws of 1923, provides, in effect, that any person who "with intent to defraud, shall make, draw, utter or deliver any check, draft, or order for the payment of money upon any bank or depository, knowing at the time * * * that the drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft or order in full upon its presentation, shall be guilty of a misdemeanor * * *." The statute further provides that as against the maker or drawer thereof, the making, drawing, uttering or delivering by such maker or drawer of a check or other order, payment of which is refused by the drawer because of insufficient funds, shall be *prima facie* evidence of the intent to defraud and of knowledge that the drawer has insufficient funds in or credit with the drawee.

Our statute just mentioned is closely analagous to the California statute on the same subject, and is almost identical in terms with the Georgia statute of 1919 (Laws, page 220). See Hollis v. State, 108 S. E. Rep. 783. The

purpose of our statute is to restrain and punish fraudulent practices associated with the issuance of worthless checks, drafts or equivalent orders for the payment of money, thereby preserving the integrity of those classes of commercial paper in trade, commerce and banking. Under our statute, the intent to defraud is an indispensable element of the offense. In that respect our statute differs materially from the Kansas statute construed in State v. Avery, 207 Pac. Rep. 838. Without the element of fraud, the statute might be repugnant to Section 16 of the Declaration of Rights, which provides that ''no person shall be imprisoned for debt, except in cases of fraud.''

It has been held by the Supreme Court of California, under a statute quite similar to our own, that a case is not excepted from the operation of such statute *merely* because the check in question was post dated. See People v. Bercovitz, 126 Pac. Rep. 479, 43 L. R. A. (N. S.) 667. On the other hand, it has been held by the Supreme Court of Arkansas that such a statute relates to checks drawn against a present, and not against a future, deposit or account; that a post dated check relates to a future deposit or account; implies within itself a want of funds to pay the same and therefore the mere issuance of a post dated check is not an offense under the statute. See Smith v. State, 226 S. W. Rep. 531. See also 7 C. J. 674. It is unnecessary, however, for us to here decide whether the mere issuance and subsequent dishonor of a post dated check constitutes the offense denounced by the statute.

When the check in question is issued and delivered prior to the date it bears, and it is dated as of a subsequent date as a time at which it is to be paid, the drawer informing the payee at the time of delivering the check that he did not then have sufficient funds in the drawee bank to pay the check, but promises that he would have such funds upon the

future date borne by the check; and the payee with such knowledge chooses to rely upon the drawer's promise to provide funds upon the date stated in the check, the issuance of such a "check" or "order" under those circumstances and its subsequent dishonor when presented by the payee on or after the date it bears, does not constitute the offense denounced by Chapter 9328, *supra*. An intent to defraud in the issuance of such a "check" is effectively negatived by the attendant circumstances. The payee knows when he accepts it that the drawer has insufficient funds to pay the check and that its payment depends upon the performance of the drawer's promise to subsequently provide funds for that purpose. Under those circumstances, the payee voluntarily elects to rely, not upon the check, but upon the promise. There is nothing in the statute under consideration which makes it unlawful to promise and fail to pay at a future date. Such a transaction amounts to no more than a promise by the drawer to pay a debt in the future, of which debt the "check" is merely the evidence. Such a check is not an unconditional order to pay "at any event", but is conditioned upon a performance of the drawer's promise to provide funds of which the payee has knowledge and to which he voluntarily assents. Under those circumstances, the wrong, if any, subsists, not in the issuance of the check, but in the failure to comply with the promise to deposit sufficient money to cover the check. See Neidlinger v. State, 88 S. E. Rep. 687; Smith v. State, 226 S. W. Rep. 531; State v. Winter, 82 S. E. Rep. 419; People v. Bercovitz, *supra;* Hammock v. State, 75 South. Rep. 436.

The mere issuance and dishonor of such a check in the hands of the original payee under the circumstances just stated, which were the circumstances the plaintiff attempted to show, would not constitute probable cause to

suppose that the drawer of the check here in question had violated Chapter 9328, *supra.*

The plaintiff was precluded from showing those circumstances in his evidence in chief by the rulings of the court hereinabove set out. His motion to re-open was therefore timely.

Under the circumstances stated, the trial court erred in directing a verdict for the defendant. The judgment is therefore reversed, and a new trial awarded.

ELLIS, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.